The issue in this case is a straightforward and simple one, whether the instructions given to the jury here violate the per se reversible rule in U.S. v. Sewell or whether they don't. The critical thing I think here is that in both instructions that were given, the first time that the jury announced that it was deadlocked, the court gave an instruction that essentially asked the jurors to or told the jurors that it was important to attempt to reach a unanimous verdict. How do we distinguish Sewell? Pardon me? How do we distinguish Sewell if we want to go your way? I would not distinguish Sewell. Oh, I'm sorry. I asked the wrong side there. I would find that what happened here is basically what Sewell said was not permitted. I mean, you know, the first instruction, which everybody agreed was okay, certainly given at the first deadlock, was that they should attempt to reach a unanimous verdict and that they should not be afraid to change their opinion. As I recall, the first time the jury came out and said they were deadlocked, what the judge gave was the standard Ninth Circuit form for the instruction that you give when you send them back to delivery. Is that correct? It's a different form for what we call the dynamite charge. No. It wasn't the lengthy, you know, Allen instruction. And it wasn't exactly the same instruction that was given the second time. The problem is, is that in both instructions, the jury was told. The first time the jury was, you know, it was the short instruction. The defense counsel did not object. And it did say, but you should attempt to reach, it's important to attempt to reach a unanimous verdict, and you should not hesitate. It says, do not be afraid to change your opinion. But it didn't tell that just to the minority. I recall when I was a district judge, the dynamite charge that I would give would tell the majority to consider the views of the minority. And then it would tell the minority to consider the views of the majority. And it would tell each of them to consider whether they might be mistaken. And then it would tell them all, if we try this thing again, the next jury won't be any smarter than you are and the evidence won't be any better than what you've heard. And if you can't make up your mind, the standard of proof beyond a reasonable doubt can sometimes help you. And that was the substance of the dynamite charge, and it wasn't given here. Well, I'm not arguing that the first instruction was the, quote, unquote, dynamite charge. But it didn't use the word minority versus majority. Exactly. It serves. That's correct. So what I'm wondering on your side, before I ask you the wrong question, the question for your side is, why shouldn't we try to distinguish Sewell to make it a little less of a trap for the unwary district judge? Well, first, in the first instruction, and even in the second one, I mean, I don't think you need to use the word minority versus majority. First of all, we don't even know what the vote split was here. No one ever asks if they're smart, but the idea is to make them all squirm a little if they're being too firm in their view. But I think it did. I mean, I still think it does when it tells them, you know, do not be afraid to change your opinion. Obviously, one side or the other is going to have to change his opinion. It could have been six to six. You say that when you send the jury out to deliberate.  They didn't ask defer to the majority. And if it were a more traditional Allen charge, it would be asking the jury to defer. Well, it is still, because, again, we don't know who, I mean, if there is, if the vote split, for example, was six to six, there's no minority, there's no majority. They're still asking jurors who are holding out for one side or the other to reexamine their views. I'm not complaining that the first charge that was given was there was anything really wrong with that. What I am complaining about is the fact that the jury heard what the judge said, very fair to the defendant, which is what the defense counsel said. They went back to deliberate, came back. Let's see. The first charge was at 11 a.m. I assume, you know, I don't have an exact number. I assume that there was a lunch break. They come back at the normal time. And at 235, they come back and say, we're still hungry. And at that point, it is at that point that I think that this crosses over into the line of what's impermissible and that what Sewell was trying to avoid was because at that point, the defense counsel said, why don't you just ask them, based upon this Ninth Circuit pattern instruction, whether or not, you know, further deliberation is really necessary, how bad is this deadlock? The judge didn't do that. The court then went on and gave the instruction, which, again, asked the jurors to not hesitate. That's the word. Not hesitate to reexamine your own views and change your opinion. And it also said that, you know, it is important. The second charge was clear. It was an Allen charge. Based upon the Ninth Circuit's pattern instruction. It's not as — I mean, I know there's some controversy over all the circuits. It wasn't as bad as some circuits, and some circuits don't even permit it. I mean, either one of these instructions alone would, I think, be fine. But the problem is, is that the jury, when it announced it was hung the second time, did not ask for further instructions, had already heard what the judge asked it to do the first time around, came back and said, we still can't reach a verdict. And giving them the second charge, in no uncertain terms, the jury understood, you're not getting out of here until you reach a verdict. And that, I think, is the problem here. And that's what Sewell said. Given the second charge. I thought the problem was the pressure that you put on the minority to change its views. And telling the jury, you don't get out of here until you reach a verdict. Well, I think that, again, Your Honor, given that we don't know who was in the minority and who was in the majority and how much of — how the vote was split, both times — You don't have to note it, given Allen's charge, where you look at the jury and you tell the minority, you know, consider that the majority may have the better view. You don't have to know. I would disagree that the words, those magic words have to be used. I think that the issue here is that in this — what happened here is that, given of the second charge, after it had already told the jury to attempt to reach a unanimous verdict and to not — you know, and to reexamine its own views, regardless of using those magic words, that when given a second time, when the judge is — when the jury has heard the first charge, attempted to deliberate, attempted to — excuse me — reach a unanimous verdict and reconsider its views, whatever they may have been, and then to come back and say, you know, we still can't reach a verdict, and then to be given the same instruction, essentially, again, basically that's telling the jury, I want a unanimous verdict before you leave, you know, court today. I'm sorry. The real issue — the real issue that we're talking about — I'm sorry, Your Honor. I can't hear you. Oh, really? I'm sorry. No, I'm sorry. Okay. The real issue that we're talking about is whether or not there was a coercive effect of the first instruction so that it was tantamount to Allen. So tell me why you think there was a coercive effect in the first instruction. I think that under, for example, the case of the United States versus — or is it — excuse me. It's Jimenez versus — Myers. Myers. And the — this Court held that, you know, what is sort of called de facto Allen charge, it says, you know, which — the instruction which instructs the jurors to work towards unanimity in the minority and re-examine the views. Again, I — the distinction that I see is that the words, the magic words minority, majority, is not the issue here. The issue is that the instruction exhorts any juror to re-examine. To re-examine their views so that there's a unanimous verdict. And again, it's coercive in conjunction with the second part. I mean, if it's — I don't think you need to go that far. I think you hurt your argument by saying that. I would say that, you know, if I were taking your position, I'd say, in effect, because it contained the two most important elements of an Allen charge on its own, it was an Allen charge, and it doesn't matter what you call it. You can not label it an Allen charge, or you could label it an Allen charge. It's still an Allen charge. And I think we also have to look under Jimenez at the particular circumstances of this case. We had a very experienced district court judge here. And at the end of the second charge, he did state on the transcript, that should do it. And that's what gives me pause. It seems as though the whole intent of it was coercive. Well, I understand the Court's position that, you know, in the same time, given, you know, an experienced judge who did not think, even over objection and considerable discussion by the parties, whether this was really an Allen charge or de facto Allen charge. We also have the fact that this was a very simple case. It was four hours of testimony. And the jury clearly had been deliberating in good faith. They were grappling with the issue of whether this was carjacking, asked for the definition of its presence. And when they came back after having been instructed as to their question, they came back and said, we can't reach a verdict. They're clearly taking it seriously. And the Court is, you know, doesn't express its exasperation. I'm not implying that at all. But it's just the Court clearly wants this jury to reach a verdict in this straight case. And sometimes that just isn't possible. Where is the part of the charge, the first of the putative Allen charges, where is the part that instructs the minority to reexamine its views? What words do you think do that? Your Honor, as I've said before, the word minority does not appear in that charge. But it does instruct all the jurors to reconsider their views. Yes, it does. It does. I guess I will save the rest of my time for rebuttal. Thank you. Thank you, Counsel. Good morning, Your Honors. I'm Craig Misaki on behalf of the United States. 7.1 is simply not an Allen charge. The cases, as the Court was just discussing, have identified a couple of essential elements. And one, the charge, in order to become an Allen charge, has to urge the jurors to reach a verdict. And number two, the charge has to direct the jurors, especially the minority jurors, to reexamine their views. And in the more traditional Allen charge, to reexamine their views in light of the majority. But, Counsel, 7.1 is intended to be the conclusory jury instructions as part of the group that are given to the jury as they go in for the first time to deliberate. It does ask them to try, if they can, to reach a unanimous verdict. And it does ask the jurors to reexamine their views if necessary. So just the fact that you give it a second time when you've already given it the first time doesn't reinforce these particular elements of trying to elicit a unanimous verdict from the Court, thinking, perhaps conveying even that this is such an easy case, you should reach a unanimous verdict. Well, I think if we look at the language of 7.1, it does not ask anybody to reexamine their views. It simply says, don't be afraid to change your minds. And I think that particular statement, along with telling them it's important to reach a verdict if they can do that without compromising their belief, I think those comments fall into the category of cruisms or verities as they use in the Fullwood case out of the D.C. Circuit. The judge is essentially telling them the obvious when he's sending them back to deliberate. He did that at the end of the case. He reminded them of those duties again at the first deadlock. And I think at that point, he's just telling them the obvious. And he may have hardened the deadlock. Typically, you don't give that twice, because typically, most district court judges are very wary of giving any charge that comes anywhere close to an Allen charge because of the Seawall case and other cases that frown on anything that could possibly be construed as coercive of the jury. You may be true, Your Honor. I don't have as much experience, but I can say this, having been there at this case. I think it was everyone's sense that jurors, the deliberations had broken down prematurely after a very short period of time. So Judge Ray was in a position where he could either just send them back without saying anything to them or do what he did here, was give them a gentle reminder of their duties to deliberate and then send them back to continue deliberating. Only later on did, when they reported the second deadlock, did he then give them the Allen charge, which directs them to reexamine their views, the correctness of their views, and also urges them, in no uncertain terms, by telling them you have a duty to reach a verdict if you can do that. That was very different than 7.1. But when it seems to me at that point, it would have been more appropriate to ask the questions and find out about a deadlock if there was one, if there was a minority and a majority. Well, I think everyone was concerned about doing that, finding out what the actual numeric breakdown in the votes of the jurors was at that point. And I imagine Judge Ray could have done that, but he didn't. And I can't read his mind. I'm not sure why. But I do know that everyone agreed that the jurors should go back and deliberate some more. And before doing that, he simply read them this very plain, vanilla 7.1 instruction that, again, and not to belabor it, acted as a reminder of how they were supposed to deliberate. Because at that point, it seemed like some jurors had dug in their heels. They simply weren't going to deliberate any further. How could you know that? In fact, I was very troubled by a line in your brief where you said, at the first reported deadlock, it became fairly clear that some of the jurors were not deliberating in good faith. But the first reported deadlock, they actually had notes with questions, and they wanted transcripts. How could you extrapolate from that and make a statement to us that the jurors weren't acting in good faith? It was based on one of the comments that the foreperson made. And she said that some of the jurors are refusing to change their mind and they won't change their mind even if we stay here until next Wednesday. It was that comment. But maybe they were convinced of their – I mean, why are you saying that wasn't in good faith? Maybe the foreperson wasn't in good faith. That's possible. I don't know what was going on in the room. But that would be – Just because she's the boss doesn't mean she's right. That is true. That is true. But that was the basis for my comment. Maybe they're all deliberating in good faith, and they just disagree. Well, I think that's always possible. We've had cases on our Court where we have a majority opinion in dissent, and they're all in good faith. I agree. I'm not doubting that. I think it was just a sense at the time that they hadn't been out very long. Look, what do we do about Sewell? I mean, I frankly – you might have gleaned from my questions. I'm not that impressed with how awful it is to tell a jury to think about it a little more. But we've got these cases, Sewell and Jimenez, and what can we do except write a memo dispo reversing? Well – We've got to have a line. And it would be nice if you would tell us what the line is. Write that line for a disposition or an opinion that could go your way. Well, if I were to write the line, off the top of my head, Sewell involved two Allen charges. This case involved only one, along with – Does it preclude you making that argument? Why isn't it a de facto Allen charge under the subsequent Ninth Circuit cases? It's not a de facto Allen charge because 7.1 does not contain those two essential elements that I alluded to at the beginning. It doesn't urge anybody to reach a verdict, and it doesn't tell anybody to reexamine the correctness of their opinions. It doesn't do either of those. And under the case law, for example, under Williams, for example, where the judge made comments to the jurors, told them to go back and to continue deliberating, it did not tell anybody to reexamine their views. In that situation, the Court did not find the two Allen charges that had been given. Here, I know we've been focusing on the language in 7.1 that tells them don't be afraid to change your mind, but I think that's very different than telling them you have to go back and you have to reexamine the correctness of your views. That's how I would distinguish Sewell. Isn't that argument precluded by this Court's decision in the Nickel case? I'm not questioning that. N-I-C-K-E-L-L. I don't know if it's pronounced Nickel or not, but I assume it's Nickel. I have that case here. May I grab it, Your Honor? Sure. Thank you. That was the case in which virtually this same 7.1 charge was given twice, but it was before and after a recess, and the Ninth Circuit said, well, that's not twice because it's right before and after the recess. But they assumed, didn't they, that this charge, 7.1, constitutes an Allen charge? Your Honor, I believe the Nickel case involved specifically that situation where you had two Allen charges. We don't have that here. The charge was the 7.1 charge. It wasn't a traditional Allen charge. I mean, it's virtually word for word what our judge did with a couple of sentences at the end about, you spent a lot of time here, let's, you know, tend to business. I'm sure you have Nickel. It's one of the cases that you said. I do have Nickel. Maybe you could remind us of that, your position on it. I'm looking at it here. Well, the way I distinguish Nickel in the brief is that it's a case where the judge could have sat there in silence and just sent them back to deliberate further, or he could have given some guidance, and that's what he did by reading 7.1. I don't believe Nickel stands for the proposition that 7.1 in and of itself is an Allen charge, though. Didn't the Court assume it was? I mean, maybe you want to say that they just were assuming it for the purposes of argument. That's certainly possible. Well, that's what it appears. It doesn't appear as if they went through the same analysis that the government went through in its brief and looked for those two essential elements of the case that seem to have identified in distinguishing what is not an Allen charge and what is, whether it takes the form of an instruction or a comment from the Court. Well, the time has run out unless my colleagues have further questions. Thank you, counsel. Thank you. Thank you. The appellant's time also expired. United States v. Vega is submitted.
judges: Kleinfeld, Wardlaw, Pogue